Mary Jo O'Neill, AZ Bar #005924 (*Pro Hac Vice* Pending)
Rita Byrnes Kittle, CO Bar #17871(*Pro Hac Vice* Pending)
Michael Imdieke, CO Bar #43940 (*Pro Hac Vice* Pending)
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Denver Field Office
303 E 17th Avenue, Suite 410
Denver, CO 80203
Telephone: 303-866-1300
Email: mary.oneill@eeoc.gov
       rita.kittle@eeoc.gov
       michael.imdieke@eeoc.gov
(*Pro Hac Vice* Motions Pending)

MARK A. KLAASSEN
United States Attorney
C. LEVI MARTIN, Bar # 6-3781
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82004-0668
Telephone: (307) 772-2124
Email: christopher.martin@doj.gov

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2018 SEP 28 PM 4 14
STEPHAN HARRIS, CLERK
CHEYENNE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| Plaintiff, | ) CIVIL ACTION NO. 18-cv-161-F<br>)<br>) **COMPLAINT** |
| v. | )<br>)<br>) |
| INTERIM HEALTHCARE OF WYOMING, INC., | )<br>)<br>) |
| Defendant. | )<br>) |

## NATURE OF THE ACTION

This is an action under the Equal Pay Act of 1963 to restrain the unlawful payment of wages to employees of one sex at rates less than the rates paid to employees of the opposite sex,

and to collect back wages due to employees as a result of such unlawful payments, and under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Nicole Aaker and other female nurses who were or are adversely affected by Defendant Interim Healthcare of Wyoming, Inc. As alleged with greater particularity below, the Equal Employment Opportunity Commission ("EEOC" or "Commission") alleges that Defendant Interim Healthcare of Wyoming, Inc. discriminated against female nurses by paying them less than a male nurse, despite performing work that was substantially equal, in violation of the Equal Pay Act and Title VII. Further, when presented with evidence of the pay disparity between male and female nurses, as well as frequent inappropriate behavior of Interim Administrator Crystal Burback, Interim Healthcare of Wyoming, Inc. failed to take appropriate corrective action, resulting in the constructive discharge of Ms. Aaker and other aggrieved female nurses.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Sections 16(c) and Section 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217, to enforce the requirements of the Equal Pay Act of 1963, codified as Section 6(d) of the FLSA, 29 U.S.C. § 206(d), and pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Wyoming.

2

## PARTIES

3. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation and enforcement of the Equal Pay Act (EPA) and Title VII and is expressly authorized to bring this action by sections 16(c) and 17 of the FLSA, 29 U.S.C. §§ 216(c) and 217, as amended by Section 1 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705, and by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant Interim Healthcare of Wyoming, Inc. ("Interim"), a Wyoming corporation, has continuously been doing business in the State of Wyoming and the City of Casper, and has continuously had at least 15 employees.

5. At all relevant times, Interim has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6. At all relevant times, Interim has acted directly or indirectly as an employer in relation to employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

7. At all relevant times, Interim has continuously employed employees engaged in commerce or in the production of goods for commerce within the meaning of Sections 3(b), (i) and (j) of the FLSA, 29 U.S.C. §§ 203(b), (i) and (j).

## ADMINISTRATIVE PROCEDURES

8. More than thirty days prior to the institution of this lawsuit, Nicole Aaker filed a charge with the Commission alleging violations of Title VII and the EPA by Interim.

9. The EEOC provided Interim with notice of the charge.

10. On June 1, 2018, the Commission issued to Interim a Letter of Determination finding reasonable cause to believe that Title VII and the EPA were violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

11. The Commission engaged in communications with Interim to provide Interim the opportunity to remedy the discriminatory practices described in the Letter of Determination.

12. On September 19, 2018, the Commission issued to Interim a Notice of Failure of Conciliation advising Interim that the Commission was unable to secure from Interim a conciliation agreement acceptable to the Commission.

13. All conditions precedent to the institution of this lawsuit have been fulfilled.

## GENERAL ALLEGATIONS

14. Interim provides in-home health care and assistance, including skilled nursing, to clients in Wyoming.

15. Interim is a franchise of Interim Healthcare, Inc.

16. Interim employs Home Care Registered Nurses (RN) to provide skilled nursing care to its clients.

17. Interim's Home Care RN job description identifies the "Minimum Education & Experience Requirements" necessary to be an RN with Interim as follows:

- Graduate of an accredited school of nursing and license to practice as an RN in the state in which employed. License is active and in good standing.
- Prefer at least 1200 hours of experience as an RN within the last 12 months or participate in Interim HealthCare's RN Preceptor program or equivalent.

*A.  Nicole Aaker*

18. In or around November 2015, Interim hired Nicole Aaker (female) as a Home Care Registered Nurse (RN).

4

19. Ms. Aaker was hired at a pay rate of $28 per hour.

20. Ms. Aaker received her RN license from the Wyoming State Board of Nursing in June 1998.

21. At the time of her hire, Ms. Aaker had approximately 17 years of professional experience as an RN.

22. On or about May 29, 2015, Interim hired Bailey Jessee (male) as a Home Care RN.

23. Mr. Jessee was hired at a pay rate of $29 per hour.

24. Mr. Jessee received his RN license from the Wyoming State Board of Nursing in February 2015.

25. At the time of his hire, Mr. Jessee had approximately two months of professional experience as an RN.

26. After being hired in or about November 2015, Ms. Aaker learned that Mr. Jessee was paid at a higher hourly rate than her.

27. On at least two occasions, Mr. Jessee complained about the disparity between his and Ms. Aaker's pay to Interim management, including Interim Administrator Crystal Burback.

28. In response to at least one of Mr. Jessee's complaints, Ms. Burback maintained that the disparity between the pay rates of Mr. Jessee and Ms. Aaker was based on experience.

29. Mr. Jessee replied that Ms. Aaker had a great deal more nursing experience than him and that Ms. Aaker should be paid the same rate or more than him.

30. In response, Ms. Burback became angry and told Mr. Jessee that he should not discuss his salary information at all.

31. On another occasion in January 2016, Mr. Jessee told Interim Director of Healthcare Service Lori Norby and Ms. Burback that he would be willing to take a pay cut to equalize his pay rate with Ms. Aaker's.

32. Ms. Norby expressed a willingness to adjust Ms. Aaker's pay rate.

33. The meeting was called off when Ms. Burback became angry and defensive.

34. Mr. Jessee resigned from his position with Interim in April 2016.

35. Ms. Norby had several conversations with Ms. Burback about rectifying the wage differential between Mr. Jessee and Ms. Aaker.

36. Ms. Norby recalls that Ms. Burback's explanation for the wage differential was words to the effect of "that's just the way it is" and that Mr. Jesssee had more experience than Ms. Aaker.

37. Between December 2015 and May 2016, Ms. Burback regularly demeaned Ms. Aaker.

38. Between December 2015 and May 2016, Ms. Burback frequently told Ms. Aaker that she needed better nurses than Ms. Aaker.

39. Between December 2015 and May 2016, Ms. Burback frequently called Ms. Aaker stupid.

40. Between December 2015 and May 2016, Ms. Burback frequently told Ms. Aaker that she was not doing her job.

41. On numerous occasions between December 2015 and May 2016, Ms. Burback slapped Ms. Aaker on the buttocks.

42. In December 2016, in the presence of Ms. Aaker, Director of Healthcare Services Norby, and Ms. Aaker's daughter, Ms. Burback grabbed a female social worker's breast.

43. On April 1, 2016, Ms. Aaker took a sick day from work due to a migraine headache.

44. Ms. Burback called Ms. Aaker at home and told her she needed to have sex with a man and she would not get headaches.

45. Ms. Aaker complained about Ms. Burback's comment to Director of Healthcare Services Norby.

46. Upon information and belief, Interim failed to address Ms. Aaker's complaint about Ms. Burback's comment.

47. In or about April 2016, Ms. Aaker complained to Ms. Burback about the disparity between her pay and Mr. Jessee's pay.

48. Specifically, Ms. Aaker complained that Mr. Jessee had only approximately 6 months of nursing experience while she had approximately 18 years of nursing experience.

49. Ms. Burback responded that she paid "per experience".

50. Ms. Burback further responded that it did not matter that Ms. Aaker had more experience than Mr. Jessee – Ms. Burback hired Ms. Aaker at $28 per hour and it would not change.

51. After receiving no response to her complaints, Ms. Aaker was constructively discharged on or about April 29, 2016.

52. Ms. Aaker last day working for Interim was on or about May 5, 2016.

**B.     *Other Female Nurses Employed By Interim***

53. At least five other female nurses were paid at hourly rates less than the $29 per hour rate paid Mr. Jessee between 2014 and 2016.

54. A female nurse with approximately two years of RN experience was hired by Interim in or about May 2015 at a pay rate of $26 per hour.

55. A female nurse with approximately 18 years of RN experience was hired by Interim in or about September 2015 at a pay rate of $28 per hour.

56. A female RN with approximately 30 years of RN experience was hired by Interim in or about July 2015 at a pay rate of $26 per hour.

57. A female RN with approximately 26 years of RN experience was hired by Interim in or about January 2016 at a pay rate of $28.50 per hour.

58. A female nurse with approximately one month of RN experience was hired by Interim in or about February 2014 at a pay rate of $26 per hour, and given a raise to $28 per hour in or about April 2015, after over a year of employment with Interim.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF
### TITLE VII COMPENSATION DISCRIMINATION – 42 U.S.C. § 2000e-2(a)

59. The allegations contained in the foregoing paragraphs are incorporated by reference.

60. Since at least May 29, 2015, Defendant Interim has engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000(e)-2(a), by discriminating against female nurses with respect to compensation.

61. Female nurses occupied jobs similar to those of a higher-paid male nurse.

62. The effects of the practices complained of above has been to deprive Ms. Aaker and other female nurses of equal employment opportunities and otherwise adversely affect their employment status because of their sex, female.

63. The unlawful employment practices complained of above were intentional.

64. The unlawful employment practices complained of above were and are being done with malice or with reckless indifference to the federally protected rights of Aaker and other female nurses.

### SECOND CLAIM FOR RELIEF
### VIOLATION OF THE EQUAL PAY ACT – 29 U.S.C. §§ 206(d)(1) & 215(a)(2)

65. The allegations contained in the foregoing paragraphs are incorporated by reference.

66. Since at least May 29, 2015, Defendant Interim has violated Sections 6(d)(1) and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206(d)(1) & 215(a)(2), by paying female nurses wages at a rate less than the rate at which it has paid a male nurse.

67. At all relevant times, female nurses employed by Defendant Interim have performed work substantially equal to that of male nurses, considering the skills, effort, and responsibilities of the job. At all relevant times, female nurses employed by Defendant Interim worked under conditions similar to male nurses.

68. At all relevant times, Defendant Interim has paid female nurses at lower rates than a male nurse.

69. As a result of the acts complained of above, Defendant Interim unlawfully has withheld and is continuing to withhold payment of wages due to Aaker and other female nurses.

70. The unlawful practices complained of above were and are willful.

### THIRD CLAIM FOR RELIEF
### CONSTRUCTIVE DISCHARGE BECAUSE OF SEX – 42 U.S.C. § 2000e-2(a)

71. The allegations contained in the foregoing paragraphs are incorporated by reference.

9

72. Beginning on or about April 29, 2015, Defendant Interim has engaged in unlawful employment practices, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by constructively discharging Aaker and other female nurses because of sex.

73. At the time of her constructive discharge, Aaker was performing her work in a satisfactory manner.

74. Because Defendant Interim failed to respond to employee reports of pay discrimination based on sex and other conditions of employment, the working conditions were so intolerable that Aaker and other female employees felt compelled to resign.

75. The work conditions at Defendant Interim were sufficiently intolerable that a reasonable employee would have felt compelled to resign.

76. The unlawful employment practices described above were intentional.

77. The unlawful employment practices of Defendant Interim complained of herein were done with malice or with reckless indifference to the federally protected rights of Aaker and other female nurses.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Interim, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in compensation discrimination based on sex as to female RNs.

B. Grant a permanent injunction enjoining Defendant Interim, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from paying wages to employees of one sex at rates less than the rates at which they pay employees of

practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

    I.    Order Defendant Interim to pay Aaker and other female RNs punitive damages for its malicious conduct or reckless indifference to their federally protected rights, as described above, in amounts to be determined at trial.

    J.    Grant such further relief as the Court deems necessary and proper in the public interest.

    K.    Award the Commission its costs incurred in this action.

DATED: September 28, 2018

MARK A. KLAASSEN  
United States Attorney

*/s/ C. Levi Martin*

C. LEVI MARTIN  
Assistant United States Attorney